# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES EDWARD MURRAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-15-364-CG |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff James Edward Murray brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, *id.* §§ 1381-1383f. The parties have consented to the jurisdiction of a United States Magistrate Judge. Doc. No. 18. Upon review of the administrative record (Doc. No. 11, hereinafter "R. \_") and the arguments and authorities submitted by the parties, the Court reverses the Commissioner's decision and remands the matter for further proceedings.[2]

---

[1] The current Acting Administrator is substituted as Defendant in this action pursuant to Federal Rule of Civil Procedure 25(d).

[2] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

## PROCEDURAL HISTORY

Plaintiff protectively filed his applications for DIB and SSI on August 27, 2010, alleging a disability onset date of August 15, 2010, and alleging disability based on major depression, anxiety, social anxiety and isolation, and various physical conditions. R. 174-79, 180-83, 212-14, 302. Following denial of Plaintiff's applications initially and on reconsideration, an Administrative Law Judge ("ALJ") held a hearing. R. 75-124. The ALJ issued an unfavorable decision on September 11, 2013. R. 56-67. The SSA Appeals Council denied Plaintiff's request for review, making the ALJ's unfavorable decision the final decision of the Commissioner. R. 1-6; *see also* 20 C.F.R. §§ 404.981, 416.1481. This action for judicial review followed.

## ADMINISTRATIVE DECISION

As relevant here, the Commissioner uses a five-step sequential evaluation process to determine eligibility for disability benefits. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 1520(a)(4), 416.920, 920(a)(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 15, 2010, the alleged onset date. R. 58; *see* 20 C.F.R. §§ 404.1571, 416.971. At step two, the ALJ determined that Plaintiff had the severe impairments of: acquired hypothyroidism; high blood pressure, well controlled; obesity; and depression. R. 58-59; *see* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 59-60; *see* 20 C.F.R. §§ 404.1520(d), 416.920(d).

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of his impairments. R. 60-65; *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The ALJ found that Plaintiff had the RFC to perform sedentary work subject to the additional limitations that Plaintiff could:

> sit for 6 hours; stand/walk for 2 hours; [have] no concentrated exposure to extreme heat; perform simple and some complex tasks with routine supervision; [have] no public contact; [perform] no customer service; . . . interact appropriately with supervisors and co-workers for superficial work purposes; and . . . adapt to work situations.

R. 60; *see* 20 C.F.R. §§ 404.1567(a) (defining "sedentary work"), 416.967(a) (same). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work and that transferability of job skills was not a material issue. R. 65; *see* 20 C.F.R. §§ 404.1565, .1568, 416.965, .968.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of his age, education, work experience, and RFC—could perform. Taking into consideration the hearing testimony of a vocational expert regarding the degree of erosion to the unskilled sedentary occupational base caused by Plaintiff's additional limitations, the ALJ concluded that Plaintiff could perform occupations such as tube operator, document preparer, and addresser, all of which offer jobs that exist in significant numbers in the national economy. R. 66; *see* 20 C.F.R. §§ 404.1545(a)(5)(ii), 416.945(a)(5)(ii). On this basis, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from August 15, 2010, through the date of the decision. R. 66; *see* 20 C.F.R. §§ 404.1520(g), 416.920(g).

STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While a reviewing court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

Plaintiff presents two issues on appeal: (1) whether the ALJ's RFC determination is supported by substantial evidence and is adequately explained, and (2) whether the ALJ failed to properly weigh Plaintiff's credibility. *See* Pl.'s Br. (Doc. No. 13) at 6, 16-20, 21-24. As to both issues, Plaintiff addresses evidence and testimony related to his mental impairments and not his physical impairments.

A. *Whether the ALJ Properly Weighed Plaintiff's Credibility*

Plaintiff asserts that the ALJ's credibility analysis was legally flawed and the result unsupported by substantial evidence. Pl.'s Br. at 21-24. Notably, at the time of the ALJ's decision, assessment of a claimant's subjective complaints was governed by Social Security Ruling 96-7p, but on March 16, 2016, the Commissioner adopted a superseding Ruling—Social Security Ruling 16-3p—that eliminated use of the term "credibility" and provided new guidance for evaluating the intensity, persistence, and limiting effects of a claimant's symptoms. *See* SSR 16-3p, 2016 WL 1119029 (eff. Mar. 28, 2016). Without foreclosing the possibility that a proper assessment under Ruling 16-3p may lead to the same result, the Court determines that the lack of analysis in the assessment actually performed by the ALJ requires reversal and remand.

The Ruling in place when the ALJ issued her decision required adjudicators to make findings regarding the credibility of testimony describing "the intensity, persistence, and functionally limiting effects of . . . symptoms," such as pain and other subjective complaints, that are associated with the claimant's medically determinable impairments. *See* SSR 96-7p, 1996 WL 347186, at *1 (July 2, 1996); *Wilson v. Astrue*, 602 F.3d 1136, 1144-45 (10th Cir. 2010). In addition to objective evidence, the ALJ was required to consider certain factors in evaluating a claimant's credibility, including:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

5

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3; *accord* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2013); *Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004).

When considering these factors, the ALJ must "explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). The ALJ's findings with respect to a claimant's credibility "'should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *Hardman v. Barnhart*, 362 F.3d 676, 678-79 (10th Cir. 2004) (quoting *Kepler*, 68 F.3d at 391); *see* SSR 96-7p, 1996 WL 374186, at *4 ("The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision."). This is because, in the absence of "specific reasons for the finding on credibility, supported by the evidence in the case record," the weight the ALJ afforded Plaintiff's statements and the reasons for that weight are unclear, and the court cannot undertake the requisite "full and fair review" of the decision. SSR 96-7p, 1996 WL 374186, at *4.

Here, the ALJ concluded that Plaintiff was "not entirely credible," stating that Plaintiff's "medically determinable impairments could reasonably be expected to cause the

6

alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." R. 62; *see also* R. 63. As support for this conclusion, the ALJ summarized Plaintiff's hearing testimony and adult function reports regarding his daily activities, summarized some of Plaintiff's medical history including medications, noted Plaintiff's sobriety and criminal history, noted that Plaintiff has traveled, and stated that Plaintiff's "treatment for the allegedly disabling impairment(s) . . . has been essentially routine and/or conservative in nature." R. 62-63.[3]

Thus, the ALJ did consider some of the relevant factors. The ALJ did not, however, closely and affirmatively link these factors to her credibility determination or provide specific reasons for that determination. *See* R. 62-63; *Wilson*, 602 F.3d at 1144 (explaining that ALJ is required to closely and affirmatively link credibility findings to substantial evidence in the record and to "articulate specific reasons" for such findings). Instead, the ALJ simply recited evidence from the record and did not provide any insight into how that evidence impacted her credibility determination—she did not tie her findings to the evidence. *See Kepler*, 68 F.3d at 391 ("[T]he link between the evidence and credibility determination is missing; all we have is the ALJ's conclusion."). The lack of explanation

---

[3] Plaintiff does not include the ALJ's review of Plaintiff's testimony and adult function reports in his argument regarding factors the ALJ relied on. *See* Pl.'s Br. at 22. However, because that review follows the ALJ's discussion of the need to assess the credibility of Plaintiff's statements, the undersigned finds the review relevant to the ALJ's credibility assessment. *See* R. 61.

7

or analysis is most notable in connection with the tendency toward isolation caused by Plaintiff's mental impairments, as detailed below.

1. Daily activities

Though the ALJ recounted Plaintiff's testimony and report of his daily activities, she did not provide analysis or explanation as to how those activities lessened Plaintiff's credibility either generally or specifically regarding his testimony that his depression was isolating. *See* R. 61, 96, 257, 258, 259; *see also* R. 262, 264. The ALJ's summary is only a narrative description of Plaintiff's testimony and adult function reports. This is insufficient to fulfill the ALJ's duty to perform a credibility analysis. *See Bledsoe ex rel. J.D.B. v. Colvin*, 544 F. App'x 823, 825 (10th Cir. 2013) (finding that ALJ's narrative summary of testimony lacked credibility findings and was insufficient).

Plaintiff reported that his mental impairments severely limit his ability to engage in activities outside of his home where he comes into contact with people. *See* R. 94, 96, 204, 205, 207, 209, 256, 258, 259. The ALJ stated that Plaintiff testified that he "goes shopping once a week" and reported on his adult function report that he "goes to the post office and grocery store." R. 61. In Plaintiff's adult function reports, however, he reported that he shops once a month for about one to two hours and that he needs someone to accompany him when he does go outside the home. R. 207, 256. At the hearing, Plaintiff stated that when he goes out, "being around a lot of people makes me real nervous" "[a]nd I just, I think people are talking about me in the store and I usually have to leave the store." R. 94.

Similarly, the ALJ states that: "[Plaintiff] traveled to McCurtain County, near Idabel, Oklahoma, to see a relative. He also travels with his parents to their medical

8

appointments in Oklahoma City and Midwest City." R. 87. Plaintiff stated that he had traveled to McCurtain County to see his sister once or twice in the three years prior to the hearing and taken no other trips outside the Oklahoma City metro area. R. 86. Plaintiff states that for the trips to McCurtain County and to his parents' medical appointments, he was accompanied by others. *Id*.

Taking Plaintiff's statements and testimony in full, the minimal activities cited by the ALJ do not constitute substantial evidence refuting Plaintiff's claims of difficulty functioning outside of his home. *See Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987) (finding that plaintiff's lifestyle consisting of limited and sporadic activities "does not contradict a claim of disabling pain" and ALJ's citation of such daily activities did not indicate substantial evidence refuting plaintiff's credibility or claims of pain). Nor do the other daily activities cited by the ALJ, which include activities performed at home, such as watching television, fixing simple meals, and managing money. *See* R. 61; *see also Miranda v. Barnhart*, 205 F. App'x 638, 642 (10th Cir. 2005) (reversing when ALJ "perfunctorily acknowledged the testimony about [the claimant's] reluctance to leave his apartment" but "focused almost entirely on the various activities [the claimant] reported being able to do while inside his apartment").

2. Sobriety and criminal history

In her discussion of Plaintiff's credibility, the ALJ stated: "[Plaintiff] has been sober since 2008," and "[Plaintiff] has three charges of possession of drug paraphernalia and was in prison in Oklahoma for 18 months." R. 63. No elaboration on these facts is made and, specifically, no findings are made as to how or why Plaintiff's sobriety or criminal history

9

impact Plaintiff's credibility or the RFC assessment. The ALJ's perfunctory references to Plaintiff's sobriety and criminal history do not constitute substantial evidence refuting Plaintiff's claims of difficulty functioning outside the home. *See Kepler*, 68 F.3d at 391 (holding that "findings as to credibility should be closely and affirmatively linked to substantial evidence").

3. Medical record

The ALJ summarized some of Plaintiff's medical history, including some of his medications, and then stated that Plaintiff's "treatment for the allegedly disabling impairment(s) . . . has been essentially routine and/or conservative in nature." R. 62-63; *see* 20 C.F.R. §§ 404.1529(c)(3)(iv) (evaluation of symptoms includes consideration of effectiveness of medication), .1529(c)(3)(v) (evaluation of symptoms includes consideration of treatment received), 416.929(c)(3)(iv), .929(c)(3)(v).

The ALJ's recitation of Plaintiff's medical history, in and of itself, indicates that Plaintiff's mental impairments were not well controlled and the treatment not routine. The ALJ's summary includes that Plaintiff had been diagnosed with "major depression"; "major depressive disorder with psychotic features"; "major depressive disorder, recurrent, severe with psychotic features"; "major depressive disorder, severe, without psychotic features"; and "anxiety disorder." R. 62-63 (citing Exs. 16F, 25F, 26F, 27F, 28F, 35F, 37F). The ALJ's summary also reflects that Plaintiff "reported suicidal and homicidal ideation [and] he hears voices"; Plaintiff reported having "frequent panic attacks"; Plaintiff's "[a]ffect was depressed"; "hallucinations and delusions were present"; and "delusions were noted as present." R. 62-63 (citing Exs. 25F, 26F, 34F, 36F, 37F). In June

2011, Plaintiff received inpatient treatment at Oklahoma County Crisis Intervention Center, where he "was assessed with major depressive disorder, recurrent, severe with psychotic features and a global assessment of functioning score of 14,"[4] "reported suicidal and homicidal ideation," and "reported that he hears voices." R. 62 (citing Exs. 25F, 26F). Subsequently, Plaintiff continued to be diagnosed with anxiety and severe depression, and continued to experience delusions, hallucinations, and panic attacks. *See* R. 62-63.

Further, though the ALJ mentioned some medications, she did not assess whether such medications were effective. *See* R. 62-63. As such, it is unclear how the ALJ's references to Plaintiff's treatment and medication led to a conclusion that Plaintiff's allegations regarding his mental impairments were not credible. *See McFerran v. Astrue*, 437 F. App'x 634, 637 (10th Cir. 2011) (rejecting credibility assessment that consisted of criteria for evaluating allegations of symptoms, a summary of portions of plaintiff's testimony, and restatement of entries in the medical record, but "provide[d] no explanation of how the ALJ applied the criteria to the testimony and medical records").

---

[4] A GAF score "represents a clinician's judgment of the individual's overall level of functioning" at a given time, using a scale of 1 to 100. Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 32 (4th ed. text rev. 2000) ("DSM-IV"). A GAF score in the range of 11-20 indicates "[s]ome danger of hurting self or others (e.g., suicide attempts without clear expectation of death; frequently violent; manic excitement) OR occasionally fails to maintain minimal personal hygiene (e.g., smears feces) OR gross impairment in communication (e.g., largely incoherent or mute)." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 n.1 (10th Cir. 2012) (quoting DSM-IV at 34).

4. Conclusion

In sum, when determining the credibility of a claimant's subjective complaints of symptoms, an ALJ must explain the conclusion reached and provide some link between the credibility determination and the evidence. *Kepler*, 68 F.3d at 391. While it is not necessary to perform a formalistic analysis of each factor considered, there must be at least some discussion of the basis for the conclusion as to credibility. *See Strickland v. Astrue*, 496 F. App'x 826, 835-36 (10th Cir. 2012). Here, the ALJ's decision stated a conclusion as to Plaintiff's credibility, and provided a recitation of evidence, but included no meaningful discussion of how the evidence served as a basis for the conclusion, at least with respect to Plaintiff's ability to function independently and outside the home. The ALJ did not attempt to tie particular evidence to the conclusion drawn or otherwise provide a basis for review by this Court as to the reasoning behind the credibility determination.

It may well be that, upon remand, the ALJ can explain the evidence leading to the conclusion that Plaintiff's complaints of the limiting effects of his symptoms do not preclude his ability to work. Because such explanation is lacking in this decision, a remand for further proceedings is necessary to allow the ALJ "to evaluate the intensity and persistence" of Plaintiff's symptoms and determine how those symptoms limit his "ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2; *see Pruitt v. Colvin*, No. CIV-15-207-HE, 2016 WL 1266960, at *1-2 (W.D. Okla. Mar. 31, 2016); *cf. Bledsoe ex rel. J.D.B.*, 544 F. App'x at 825-26 (rejecting the proposition that the ALJ's failure to fulfill the duty to perform a credibility analysis could be excused as harmless

error where "[a] reasonable administrative factfinder could view" the claimant's testimony "as supporting a finding of disability").

B. *Whether the ALJ's Decision Otherwise Contains Reversible Error*

Based on the recommendation of remand, the Court need not address the remaining claim of error raised by Plaintiff. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

## CONCLUSION

Based on the foregoing analysis, the decision of the Commissioner is REVERSED and REMANDED in accordance with sentence four of 42 U.S.C. § 405(g). Judgment will issue accordingly.

IT IS SO ORDERED this 12th day of September, 2017.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE